Lott, Senator.
The confessions of Van Dyke were at the time of the trial claimed to be admissible on the ground that he was still the owner of the note in question; but the circuit judge refused to admit them, holding that, as the evidence then stood, Cagwin was the party beneficially as well as legally interested. I think his decision was correct. The only testimony on the point was that of Peckham, which showed the transfer to Paige to have been absolute, and for a full and bona fide consideration. At all events, the judge would not have been justified, I think, in permitting the introduction o.f these confessions as evidence at that time. It is contended, however, that inasmuch as it appeared that the transfer of the note had been made after it fell due,(a) the declarations of Van Dyke were admissible as against Paige, the holder.
It is a well settled rule that the best evidence is to be produced of which the nature of the case admits. Phillips, in his treatise on evidence, says: “ It is a general principle in the law of evidence that if any fact is to be substantiated against a person, it ought to be proved in his presence, by the testimony of witnesses sworn to speak the truth; and the reason of the rule is, because *369 evidence ought to be given under the sanction of an oath, and that the person who is to be affected by the evidence may have an opportunity of interrogating the witness as to his means of knowledge, and concerning all the particulars of the fact. Hearsay evidence of the fact is therefore not admissible.” (1 Phil. Ev. 186, ed. of 1823.)
In the present case, the genuineness of the note was not called in question. The making of it was clearly proved. Van Dyke was therefore a competent witness, and the plaintiff was entitled to have his declarations on oath. (2 Stark. Ev. 298; 1 Wheaton’s Selw. 315; Skelding v. Haight, 15 Johns. Rep. 275; Powell v. Waters, 17 id. 176; Williams v. Matthew, 3 Cowen, 252; 1 Cowen & Hill’s Notes, 133; Bristol v. Dann, 12 Wend. Rep. 142.) The testimony offered would have been hearsay evidence merely. The rejection of it by the court below was therefore proper, and is sustained by the following decisions of our supreme court. (Alexander v. Mahon, 11 John. Rep. 185; Kent v. Walton, 7 Wend. 256; Hurd v. West, 7 Cowen, 752 ; Whitaker v. Brown, 8 Wend. Rep. 490; Bristol v. Dann, 12 id. 142; Beach v. Wise, 1 Hill, 612.)
I am aware that is laid down in a work of high authority, (Cowen & Hill’s Notes to Phil. Ev. p. 666 et seq.,) that the cases of Waring v. Warren, (1 Johns. Rep. 340,) and Austin v. Sawyer, (9 Cowen, 39,) are in conflict with those above referred to, and support the admissibility of the evidence offered. Such a conclusion, however, is not warranted.
The case of Waving v. Warren was an action of trover brought for certain goods, formerly in the possession of the defendant’s wile, which he claimed by virtue of his intermarriage with her; and her declarations, made previous to the marriage, “ that the goods in question belonged to the plaintiff, and were not her own,” were admitted. It will be seen that the admissions here were by a person through whom the defendant claimed title; hot by purchase, but by representation. The claim of the husband was under and by virtue of his marital rights, and he stood in the same situation as if he claimed in a representative character. The person "making the admission, and the defen *370 dant, were considered identical in interest. An admission by the party represented is admissible in evidence as against the representative. (See 2 Stark. Ev. 42 to 48, 3d Am. ed.)
In the case of Austin v. Sawyer a verdict was taken for the plaintiff, subject to the opinion of the court on a case made: and the question as to the admissibility of the declarations of the vendor, to affect the rights of his vendee, does not even appear to have been raised or passed upon. The effect of the decision in that case, so far as it relates to the admissibility of such declarations, was noticed and considered by the court in Whitaker v. Brown above cited, and it was there said that the reporter had fallen into an error in his marginal note to the case of Austin v. Sawyer, in stating that it overruled the previous case of Hurd v. West. Chief Justice Savage and Mr. Justice Sutherland were both of them judges at the time when these cases were decided, and appear to have joined in the decision of each. It is evident therefore that the decision in Austin v. Sawyer was not intended by the court who made it to overrule the case of Hurd v. West. And it may be remarked also, that the declarations relied on in Austin v. Sawyer were certain conversations had between the vendor and vendee in relation to the subject matter of the sale.
This question has also come'under the consideration of the courts in England. The case of Duckham v. Wallis, (5 Esp. Rep. 252,) is a prominent one. The defence relied on in that case was, that the bill sued had been endorsed to the plaintiff after it became due, and that the defendant, before it became due, had settled it in account with the holder. The declarations of the holder, made before the endorsement to the plaintiff, were offered as evidence to prove these facts. It was contended on the one side, that the holder was a competent witness, and that what he had said was not evidence; and on the other, that the defendant might set up the same defence against the plaintiff, suing as endorsee, which would have been available against the endorser, and as there could be no doubt that the holder’s own declarations would be evidence against himself, it was equally clear that they ought to be received as against the plaintiff. But Lord Eilenborough said, he thought the evidence inadmissible; “ that though *371 a bill had been endorsed after it became due, if a full and valuable consideration had been paid, he did not know why the holder might not recover on the bill, subject, nevertheless, to the case put, of its being discharged by the defendant; but it would be incumbent on him to prove the consideration paid; and of that the plaintiff should give evidence. That the fact of the bill having been paid when due, and settled in account with the defendant, was easily proved by calling Evans himself, [the holder,] or by the evidence of third persons; but what Evans had said was not the best evidence, when he himself could be called: it would be making the declarations of a third person evidence to affect the plaintiff’s title, when that party was not on the record, and therefore could not be received.” (See also Phil. Ev. 229, Am. ed. of 1823; 2 Stark. Ev. p. 42.)
There are cases, I concede, where the declarations of a party in interest can be given in evidence against a subsequent holder; but in my opinion, they have no bearing on the question under consideration. Starkie says that “ an admission by the owner is sometimes evidence against one who claims title under him,” (2 Stark. Ev. 48,) and he cites the case of Ivat v. Ferril and another, (1 Taunt. 141,) in support of this position. By an examination of that case it will be seen that it is not analogous to the present. ' It was an action of trespass brought by the plaintiff for certain property converted to the use of the defendants. The defendants justified under a heriot custom, and the only question between the parties was, whether one Alice Watson, the tenant, was possessed of the property at the time of her death. It was admitted that it had formerly been her property, but it was contended that some time before her death she had transferred it, with the rest of the farming stock, to the plaintiff. For the purpose of proving this transfer a witness was called to speak to a conversation in which Mrs. Watson had stated she had retired from business, and given up her farm and stock to her son-in-law, the plaintiff The evidence was excluded by Lord Ellenborough on the trial, and a verdict was rendered for the defendants; but Lord Mansfield set aside the verdict, and granted a new trial, saying, “the evidence ought to have *372 been received. The ¡admission supposed to have been made by-Mrs. Watson was against her o.wn interest.” He added: “ Had this action been between Mrs. Watson and the present plaintiff, her acknowledgment that the property belonged to him might clearly have been given in evidence. It ought therefore to have been received in the present instance.” The reason assigned was, because the right of the lord of the manor depended on her title. The defendants did not claim as purchasers, but stood in a mere representative character. Their rights grew out of a custom which gave certain gopds and chattels of the tenant, on his death, to the lord of the manor. They stood in the place of the tenant, and in no better situation than she did at the time of her death. It was not therefore a case where the declarations were sought to invalidate the claims of a purchaser: and it may be remarked also that the person making the declaration was dead.
The case of Strong v. Wheeler, (5 Pick, 410,) is relied on by the plaintiff in error. There the defence to the suit was made by a person not a party to the record, under the attachment act in Massachusetts, and the declarations of the defendant were admitted in favor of the plaintiff, for the reason “ that the creditor who comes in under the statute makes the defence for the defendant of record, and he is allowed to defend the suit as the party to the suit himself could or might, but he is not put upon any other or better ground.”
There is also another 'class of cases, where the declarations offered were a part of the transaction itself; as in Kent v. Lowen, (1 Campb. 177, 180.) The defence in that case was usury. Certain letters written by the payee before the date of the note, in relation to it, were admitted as evidence as a part of the res gestee. But Chitty says that “in a subsequent case a very learned judge refused to receive in evidence proof of what a prior holder had said against the validity of a bill whilst he was the holder, because such holder was living, and ought to have been called as a witnessciting several cases, and among them Beauchamp v. Parry, (1 Barn. & Adol. 89.) He adds, however: “ It is now settled, that in general, letters of an *373 endorse!, (and at all events those written after he has parted with the bill,) are not admissible in evidence to impeach the endorser’s title,” unless it be previously shown “ that the endorsee is identical in interest with the payee, as by having taken the note after due, or without any consideration.” (Chitty On Bills, 650, 1, 8th Bond, ed.)
This last observation of Mr. Ghitty has been much relied on in support of the evidence offered in the case under consideration, and I propose briefly to examine it. Without denying the rule to be that the declarations of a party “ identical in interest” with him who seeks the benefit of the note, are admissible, it will be found that the proposition laid down as ah example or illustration, viz. that the mere taking of a note after due creates such an identity of interest, is unsupported by authority. The case of Beauchamp v. Parry, before referred to, is cited in support of it. The only point decided in that case was, that the declarations made by one Wade, the former-holder of the note, which had bqen admitted on the trial against the subsequent endorsee, who had taken the note before maturity, were not admissible, and a new trial was ordered. It is true that Lord Tenterden, who had erroneously admitted the evidence on the trial, after setting himself right on the question he was reviewing, adds: “ If the endorsement had been made to the plaintiff after the note had become due, the case would have been different.” That remark was, however, a mere dictum, uncalled for by the case, and full as likely to be erroneous as the decision made by him on the trial. He bases his decision on the ground that Wade was not identified with the plaintiff in point of interest, saying, “ he might have been called as a witness,” and that “ his declarations were no more than mere assertions, "not upon oath.” Parke, J. said: “ The plaintiff does not claim by the title of the endorsee of the note. He has a title of his own as endorsee.” And Bagby, J. observed: u The endorsee of a bill or note cannot be affected by the declarations of the. payee, unless it be shown that he is identified in interest with him,” and then adds, “ as if he took it without consideration, or after it was duea remark, as I have before stated, en *374 tirely gratuitous, and in no way necessary to the decision of the question.
The case of Pocock v. Billings, (Ryan & Moody, 127,) has been cited to show the admissibility of the evidence in question. That was an action by an endorsee against the acceptor of a bill of exchange. The defence was, that the drawer of the bill had negotiated it after he became a bankrupt, and that neither the plaintiff, nor several other endorsers, had given any consideration for it. The assignees were the real defendants. The declarations of an endorser, made whilst he was holder of the bill,- were, after objection, received by Best, J. 11 as being made against his own interest, by showing that he had no title.” Here it will be observed that the holder had not given any consideration for the bill. He was therefore not a bona fide holder. The same case, as reported in 2 Bingh. 269, when it first came before the court, has also been relied on; in relation to which Ch. J. Abbott, in Barough v. White, (4 Barn. & Cress. 325,) said: “ The point decided there was, that in an action on a bill of exchange, the declarations of a prior holder could not be received, unless they were made when he had possession of the bill. That which fell from the lord chief justice as to such declarations being admissions, and receivable when adverse to the interest of the party making them, was extra-judicial ; and such observations are always to be taken rather as illustrations, than as authorities in law, for we all know that they are constantly made without the same consideration and care as those which belong to the point in judgment.” It may be remarked too in reference to Pocock v. Billings, that it does not appear whether the declarations relied on were made before or after the maturity of the bill.
This question was also discussed and considered in Phillips v. Cole, (10 Adol. & Ellis, 106.) There the declarations, contained in letters written by a prior holder, were offered to show that the note was passed to the plaintiff, not merely without consideration, but fraudulently. In relation to which, Lord Denman says: “ It is clear that the declarations of third persons *375 alive, in the absence of any community of interest, are not to be received to affect the title or interests of other persons, merely because they are against the interests of those who make them. The general rule of law, that the living witness is to be examined on oath, is not subject to any exception so wide, and we are of opinion that the circumstance of fraud being acknowledged introduces no difference in principle. That acknowledgment would certainly make the evidence, if receivable, more weighty, but only upon the ground that it is more strongly against the interest of the party than any mere pecuniary consideration could make it. The ground of the admission would be the same in either case, and the same objection applies in both, the want of community of interest.”
The case of Benson v. Marshal, (cited 4 Dowl, & Ryl. 732,) is referred to by Mr. Chitty in support of the admissibility of this evidence. It may be remarked in reference to that case, that although cited by counsel, it was not relied on by the court, and Was never reported. (See 4 Dowl. & Ryl. 731, note (b.))
It is proper to refer to the views of another eminent writer on this subject. Mr. Greenleaf, in his treatise on evidence, lays down the rule that an assignee is, in certain cases, bound by the previous admissions of the assignor, in disparagement of his own apparent title. He concedes that “ this is true only where there is an identity of interest between the assignor and assignee,” and then adds : “ Such identity is deemed to exist, not only when the latter is expressly the mere agent and representative of the former, but also where the assignee has acquired a title with actual notice of the true state of that of the assignor, as qualified by the admissions in question, or where he has purchased a demand already stale, or otherwise infected with circumstances of suspicion.” (1 Greenl. Ev. 222, § 190.) In support of this doctrine he cites the following books and cases, viz. Harrison v. Vallance, (1 Bing. 38;) Bayley On Bills, by Phillips & Sewall, pp. 502, 503, and notes, (2d Am. ed.;) Gibblehmise v. Stong, (3 Rawle 437;) Hatch v. Dennis, (1 Fairfield, 244;) Snelgrove v. Martin, (2 McCord, 241, 243.) He subsequently *376 says: “ In an action by the endorsee of a bill or note, dishonored before it was negotiated, the declarations of the endorser, made while the interest was in him, are admissible in evidence for the defendant. (1 Greenl. Ev. 222, § 190, citing Pocock v. Billings, Ry. & Moody, 127; Chitty On Bills, 650, 8th ed.; 1 Phil, & Am. On Ev. 415, 416; Shirly v. Todd, 9 Greenl. 83.) With all due deference to the opinion of the respectable author, it will, I think, be found, on reference to the cases cited by him, that they do not sustain his position.
In the case of Harrison v. Vallance, (1 Bing. 38,) the declarations were received because the party making them was “ substantially interested in the cause.”
The case of Gibblehouse v. Stong, (3 Rawle, 437,) was ah action of ejectment, and had no reference to the question of evidence as applicable to personal property.
In Hatch v. Dennis, (1 Fairfield, 244,) the court, after reviewing the authorities referred to by them, conclude by saying: “ Upon a careful examination of all the cases bearing upon this question, which we have been able to examine, including that of Whitaker v. Brown, (8 Wend. 490,) we think the weight of authority is in favor of admitting the declarations of the payee, when made under such circumstances as they were in the case before us.” There I concede that the declarations of the payee, made before the transfer of a note endorsed after it became due, were admitted as against the endorsee. The principal authorities referred to by the court will be briefly examined. In Shaw v. Broom, (4 Dowl. & Ryl. 730,) the only point decided will be found to be, that the declarations made by a prior holder of a note, after endorsement to a third party, are inadmissible against his endorsee. The case of Beauchamp v. Parry, (1 Barn. & Adol, 89,) as has already been shown, only decided that the declarations of a prior holder were not admissible as against an endorsee to whom the note is endorsed before maturity. The case of Smith v. De Wruitz, (Ryan & Moody, 212,) decides the same point. In Graves v. Key, (3 Barn. & Adol. 313,) the question under consideration did not arise. It was there held that a maker of a note was *377 entitled to a credit for previous payments made by him, as against a subsequent endorsee, to whom the note was transferred when over due. The case of Pocock v. Billings, (Ryan & Moody, 127,) has already been examined.
The case of Snelgrove v. Martin, (2 McCord, 241,) cited by Mr. Greenleaf, will be briefly noticed. The principle there decided I concede sustains the doctrine of the learned author. But it was the decision of a majority of the court only; Col-cock Justice dissenting. It may be remarked, however, in relation to the case, that no authorities were cited by the court in support of the decision. The judge who gave the opinion lays down the general proposition that “declarations &c., relating to the matter in dispute, made by a person while he was interested, is good evidence against a party claiming subsequently under such a person.” And yet the same court, in Martin v. Lightner, (2 McCord, 214,) decided at the same term, that the declarations of the payee of a note, payable to him or bearer, and which had been passed to the plaintiff by delivery after it became due, were inadmissible. In giving the opinion the following language is used: “ The declarations of the payee in relation to the interest of the present plaiñtiff were properly rejected. The case does not come within the principle involved in the case of Jordaine v. Lashbrooke, (7 Term Rep. 601.) In that case the question was whether the endorser of a note could be a witness to impeach its validity, and not whether his declarations might be given in evidence. It appears to me that the payee might have been a witness, but his declarations certainly could not be received.”
The remaining case cited by Mr. Greenleaf, viz. Shirley v. Todd, (9 Greenl. 83,) was an action by the endorsee against the acceptor of a dishonored bill or draft, in which the declarations of the endorser, made while the interest was in him, were held to be admissible in evidence for the defendant. The decision is based on the cases of Ayer v. Hutchins, (4 Mass. 371,) Peabody v. Peters, (5 Pick. 3,) and Sergeant v. Southgate, (5 Pick. 312.) I have examined these authorities, *378 but they do not sustain the case of Shirley v. Todd in which they were cited. In Ayer v. Hutchins, there was one distinguishing feature. The endorsement was made after the dishon- or of .the note ¡ but yet it was offered to be shown that it was made for the endorser himself. And the court say: “ If this was the case, whether the note was endorsed before or after it became due, we are satisfied that any evidence may be admitted against the trustee, which might have been admitted against the cestui que trust, if he had sued the note as promisee.” It is true, the court in delivering their opinion observe, that the endorsee of a note after maturity takes it “ subject to any legal defence which might be made against a recovery by the prom-i'sée.” But there is nothing in the case to show that such a defence could be proved by the declarations of the' promisee himself, without calling him as a witness. The case of Pea body v. Peters supports this principle only, that an endorsee with notice, or who stands charged with notice by reason of his taking a dishonored note, is liable to the same defence which could be made against the original payee, and upon proof of payment of the note on which the action was founded, judgment was given for the defendant. The case of Sargent v. Southgate establishes the same principle; but the question whether that defence can be established by the declarations of such original payee was not raised. It may also be remarked, in reference to the last case, that the plaintiff in the suit received the note on which it was brought “as agent and trustee of the payee, to collect and pay his debts with the proceeds.”
The doctrine or rule as above laid down by Mr. Greenleaf is countenanced by Chitty, and also by Bayley, and Phillips & Amos, but not fully recognized. They all refer In support of the position to the case of Benson v. Marshall, above commented on, which, as I have attempted to show, ought not be relied on as authority. Indeed I may add, that it is expressly said by Phillips & Amos, (p. 416,) that the declarations of a prior holder are “ not admissible where there is no existing identity of interest.” Most of the cases collected in the notes to each of these works have already been examined, and if I am correct *379 In my interpretation of them they do not sustain' the principle for which they are cited.
I do not deem it necessary to refer particularly to the other cases cited by the plaintiff in error. It will be found, on an examination of most of them, that thejr do not sustain the doctrine that the declarations of a prior holder of a note, or vendor of a chattel, are admissible in evidence as against a subsequent owner, who acquired title for a valuable consideration. jit may I think be laid down as a general proposition, that thej cases in which such evidence has been held admissible are those only where the declarations were made by a party really iri interest, or by one through whom the plaintiff claimed as a privy; by representation, as in cases of bankruptcy, death, and others' of a similar character. Where the rule is applicable, there! must, it is conceded, be “ an identity of interest ” between the assignor and assignee. That relation appears to me to be based ' on the fact that the rights of the assignor continue and are represented by the assignee. Where a person becomes a purchaser of a chose in action or a chattel, for a valuable consideration, his rights are independent of the assignor, and beyond his control. Although it may be necessary to found his title on a transfer, yet the mere proof of such transfer is evidence of his light. / Personal property is frequently acquired by delivery merely. Possession alone is then prima facie evidence of title, and the rights of the possessor do not necessarily depend on the title of the person by whom the delivery was made, or from whom such possession was obtained. It was well said by Williams, J., in Fitch v. Chapman, (10 Conn. Rep. 8,) that “the identity of interest spoken of in the books referred rather to those cases where the nominal party was suing in fact for the benefit of a third person, and this identified their interest.” j1 It is insisted, however, that the endorsee of a note over due takes it subject to all the equities existing between the original parties at the time of the endorsement; and that if the admissions made by a prior holder are excluded, then the other party is prejudiced. It is true that the note in such case is subject to the same defence in the hands of the endorsee as when it was *380 in the hands of the endorser; but it by no means follows that the mere declarations of such endorser can affect the rights of the endorsee. The means of proving a defence may be affected, but the right to make it is not impaired. The defence still exists; but it must be established by testimony, and not by mere declarations. The rule laid down by the supreme court of this statei is in my judgment not only consistent with the general principles of evidence, but necessary for the protection of private rights.!
It was said, lam aware, by Mr. Justice Bronson, in Beach v. Wise, (1 Hill, 612,) a case like the one under consideration, that if it were an original question, he should be unable to see any solid distinction between cases relating to real property, where the declarations of the former owner are constantly admitted, and those relating to choses in action, and other personal property; and he put his judgment on the sole ground that the point had been adjudged against the defendant in that case by those who had gone before him in the court. I admit that there is no solid distinction in principle between the cases referred to by the learned judge; but I by no means admit that the rule as applicable to personal estate should be altered. /.Qn the contrary, it appears to be an anomaly in our law, if, by the rules of evidence, titles to real estate can be made to depend on the mere declaration of a prior owner, when every contract for the sale of land is required to be in writing, and title can only be conveyed by deed. There would in my judgment be much more propriety in excluding such declarations as affecting real estate, than in admitting them as to personal property!) But I do not concede that such declarations are now admissible, to affect the title to lands, although they may be admitted to explain the character of a possession. The supreme court, in Jackson ex dem Burr v. Shearman, (6 Johns. Rep. 19,) say: “The acknowledgments of a party are generally a dangerous species of' evidence, and although good to support a tenancy, or to satisfy doubts in case of possession, they ought not to be received as evidence of title.” Instead of extending this species of evidence, I think it safer and more conducive to the6 advancement of jus *381 tice that it should be confined to such cases only where, by the settled rules of law, it is declared to be admissible. The remarks of Mr. Greenleaf as to this species of evidence are deserving of great consideration. He says: “ With respect to all verbal admissions, it may be observed, that they ought to be received with great caution. The evidence, consisting as it does in the .mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party did actually say.” (1 Greenl. Ev. 233.) See also the observations of the chancellor on this subject in Law v. Merrill, (6 Wend. 277.)
It is no answer to the views above presented that the rule will permit a transfer to mere nominal parties, to avoid the effect of admissions made previously. When such is the fact there is no change of ownership. The party by whom the transfer is made is still the party in interest, and his declarations are clearly admissible. If, however, on the other hand, the declarations of a prior holder of personal property are to affect the rights of a vendee or purchaser, for a valuable consideration, the tenure of it will be very precarious and uncertain. I prefer rather to abide by the old landmarks of the law, as fixed and established by our supreme court. Their removal woul d greatly interfere with the enjoyment of property, and open the door to fraud and litigation. The rule is salutary in its tendency, and the application of the doctrine of stare decisis in such a case as the present, is imperiously demanded.
In view of the whole subject, whether considered in reference to authority or principle, I am of opinion that the judgment of the supreme court should be affirmed.
Senators Wright and Putnam also delivered opinions in favor of affirming the judgment of the supreme court, concurring in the general doctrine advanced by Senator Lott.
*382 Hopkins, Senator.
The plaintiff below purchased the note, if he purchased at all, after it was due, and of course took it subject to all equities between the former parties. He took no better title than the vendor had, which, before the sale, was certainly subject to be defeated by proof of his own declarations. Does the transfer of the note then, after it was dishonored, do away the effect of admissions of the prior holder, made while the note was in his hands, going to discharge the party from liability on it? Does it not still remain subject to be defeated by proof of those admissions, or must the defendant make stronger proof than he had to make before ? The declarations offered to be proved were made at a time when it was certainly against the interest of the holder to make them, and the reasonable presumption would be that they are true.
Can it be doubted that a written receipt or release, duly proved to have been made before the note was transferred, would put an end to it as a thing of any value, or at least that it would be prima facie evidence of payment or discharge ? And yet a written receipt or admission of payment would have no more effect than a verbal acknowledgment to discharge the note.
It is supposed that if evidence of such admissions or declarations is allowed, it may lead to collusion between the original parties. This might as well be done by a written discharge, as by an oral one. But I cannot see that there would be any inducement to it, or that the vendor could derive any benefit from it. The sale would be in bad faith, and the same proof of his admissions which would defeat a recovery against the maker by the purchaser, would enable him to recover against the vendor. Such an attempt would be as improbable as an attempt to sell a note after actual payment. No advantage could be derived from it.
But on the other hand, if proof of such declarations is not to be allowed, the prior holder may, as is alleged in this case, transfer the note to another by collusion, and in that manner compel the defendant to resort to the uncertain testimony of the prior holder himself, who had conspired with the nominal plaintiff to defraud him. As between the original parties, the discharge or *383 release could not be proved in any other way than by such declarations. At all events, the defendant had a right to prove it in that way, and that right ought not to be abridged by a transfer after due, to one who takes subject to prior equities. It is unreasonable to take from him this right, and compel him to call, as his own witness, one who has undertaken to defraud him, and who would have strong inducements to commit perjury to sustain the fraud. If the defendant is bound to call him as a witness, he cannot impeach him, or question his credibility.
The feelings of the witness, if not his interests, would be with the plaintiff to whom he had transferred the note as something of value, and if his testimony is necessary in any case to elicit the truth, it would be a safer rule to let the defendant in the first instance prove the declarations, and then let the plaintiff who has taken a dishonored note, if he sees fit, call the prior holder to explain, when the defendant would have the right to cross-examine him. To such a rule the plaintiff should have no objection, as he took the paper over due, upon the credit of the prior holder; thereby declaring his confidence in him, and conceding that he is a person whom he may safely call as a witness in his behalf. The case of Coster v. Symons, (11 Eng. Com. Law Rep. 349,) is not only a case in point, but the result of the cross-examination of the witness, whose attempted explanations there were found upon such examination to be unsatisfactory, is a strong instance of the propriety of the rule suggested as the true one.
I do not think that the application of the rule, in suits on paper over due, is necessarily to be extended to all cases of title to personal property; though I am inclined to concur with the learned authors of the Notes to Phillips on that subject, at least where the purchaser takes with notice of equities between the prior owner and others. (Cowen & Hill’s Notes to Phill. Ev. 646.) This is rather a question of discharge or release of a party from liability, than a question of title to personal property. If the debt or note has been paid or discharged, it is no longer property. The question then is, what is good evidence of payment of a note, or release of a party? The case is like that of *384 Walthol v. Johnson, (2 Call, 275,) where the declarations of the vendor, made before the sale of personal property, the title to which he derived through a mortgage, were allowed as evidence that before the sale the mortgage was paid.
But I think the judgment below erroneous on another ground, viz. that the province of the jury has been interfered with. If the sale to Cagwin, the plaintiff below, was a mere formal one, or a contrivance to avoid evidence of the former holder’s declarations, (in which case the former holder would be in fact the plaintiff in interest,) then evidence of his declarations ought certainly to be admitted. I think there was evidence given from which a jury might infer that the sale was a mere trick, for the purpose of forcing the defendant below to submit his rights upon the testimony of the plaintiff in interest in the suit. At all events, there was evidence given on that question which I think should have gone to the jury, with the evidence of the prior holder’s declarations, (if they were not admissible otherwise,) under a charge from the judge that if the jury came to the conclusion that there was no actual sale to Cagwin, then they were to consider the former holder as plaintiff in interest, and take into consideration the evidence of his declarations. In Conroy v. Warren, (3 Johns. Cas. 263,) Mr. Justice Kent says, “ if a question of mala fide possessio arises, that is a matter of fact to be raised by the defendant, and submitted to the jury.” I see no reason why the rule should not apply in this case. I shall vote for a reversal of the judgment below.
On the question being put, “Shall this judgment be reversed ?” the members of the court voted as follows:
For reversal: Senators Hard, Hopkins, Lawrence, Mitchell, Porter, Varney and Works—7.
For affirmance: Senators Bockee, Chamberlain,,Corning, Deyo, -Lott, Platt, Putnam, Rhoades, Root, Scott, Scovil, Strong and Wright—13.
Judgment affirmed.(a)

 No evidence on this subject appeared in the case except that stated at p. 361, 2 of the text.

 It may be doubtful perhaps whether the proposition stated in the reporter’s syllabus of this case is necessarily established by the decision. If the noté *385 was transferred by Van Dyke before it became due, then the question discussed in the opinion of Senator Lott was not presented, and the result to which the court came was almost inevitable. (Barough v. White, 4 Barn. & Cress. 325; Beauchamp v. Parry, 1 Barn. & Adol. 89; Smith v. De Wruitz, Ry. & Mood. N. P. Rep. 212; Phillips v. Cole, 10 Adol. & Ellis, 106; 1 Greenl. Ev. 222, § 190; 2 id. 165, § 200; Cowen & Hill’s Notes to Phill. Ev. 668; 1 Phill. & Amos On Ev. 416, and note (1).) No evidence was given at the trial on this subject. Peckham’s testimony, the only witness called, left Cagwin to stand upon the title of Gay, who was to be presumed a bona fide purchaser, before dishonor, until the contrary was proved. (Ranger v. Cary, 1 Metc. Rep. 369; Webster v. Lee, 5 Mass. Rep. 334; Wilbour v. Turner, 5 Pick. 526; Story On Bills, 492, §§ 415, 416; Story On Prom. Notes, 220, 468, §§ 196, 381.) Nor was any attempt made to overcome this presumption, except by the general offer of counsel stated at p. 362 of the text, which seems to have related exclusively to the declarations of Van Dyke. And if the circuit judge so understood the offer, he was bound to overrule it, even according to the cases relied on by the counsel for the plaintiff in error. For they all concur, that before such declarations can be resorted to, the party seeking to avail himself of them must show, by independent evidence, prima facie at least, that the note was transferred after maturity, or that some other fact exists connecting the adverse party with the title of the declarant. (See Beauchamp v. Parry, 1 Barn. & Adol. 89; Hedger v. Horton, 3 Carr. & Payne, 179; Barough v. White, 4 Barn. & Cress. 325; Welsted v. Levy, 1 Mood. & Rob. 138; Phillips v. Cole, 10 Adol. & Ellis, 106; Harris v. Wilson, 7 Wend. 57.)